**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JORDAN KELLY, on behalf of himself and on behalf of all others similarly situated,**

**Plaintiff,**

**v.** **CASE NO. : 8:18-cv-01400-CEH-CPT**

**ORION MARINE CONSTRUSTION, INC. d/b/a ORION MARINE GROUP,**

**Defendant.**

**__________________________________/**

**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

On January 9, 2019 the Court granted the Parties' Joint Motion for Preliminary Approval of the class-wide settlement ("Settlement") of the Fair Credit Reporting Act ("FCRA") claims asserted against Defendant. (Doc. 22). Since then, notice has been sent out and the results have been nearly perfect in terms of acceptance by the class. In fact, not a single Class Member objected to the settlement. Likewise, not a single Class Member asked to be excluded from the settlement.

The Settlement -- ***which is a claims paid*** -- settlement, provides immediate monetary relief to the 900+ class members who will each receive checks without having to return a claim form. Notice has been sent out to Class Members and the reaction to the Settlement has been overwhelmingly positive. Given the Settlement's reasonableness, fairness, and adequacy, and the favorable reaction of the Classes, following the Fairness Hearing Scheduled for April 18, 2019, the Court should grant Final Approval of the Settlement. A proposed Order granting this Motion is attached hereto as Exhibit A. In support of their Joint Motion, the Parties respectfully submit the following:

## I. BACKGROUND.

### A. Allegations and Procedural History

Jordan Kelly filed this class action lawsuit on June 11, 2018, asserting claims against Orion Marine Construction, Inc., for alleged violations of the Fair Credit Reporting Act (FCRA). See generally Docket 2. In particular, he alleged that Orion Marine improperly included unnecessary information in its disclosure and authorization forms that it used to obtain employment background checks. Id. ¶¶ 52–63. Kelly sought to represent the interests of all current, former, and prospective employees who were the subject of any consumer reports Orion Marine procured in the five years preceding the complaint, though no definitive rulings have been issued yet regarding the class status. Id. ¶ 43. Orion Marine specifically denies that it violated the FCRA. Docket 7 ¶¶ 52–63. On October 16, 2018, the parties reached a settlement agreement during a mediation pursuant to this Court's case management and scheduling order. See Docket 13, at 2; Docket 17.

### B. The Settlement.

The parties' settlement agreement, if approved by this Court, will resolve all claims of both Kelly as the named plaintiff and the putative class members for whom Orion Marine procured consumer reports in the two years preceding the complaint. See Settlement Ex. A ¶ 1. The settlement recognizes the existence of 932 putative class members. Id. ¶ 1. Under the agreement, Orion Marine will create a non-reversionary common fund of $23,300 for the class members, resulting in a payout of $25 for each claimant. Id. ¶ 5. Additionally, and subject to this Court's approval, Orion Marine will make a direct payment to the lead class counsel of up to $10,000 and a direct payment to Kelly personally of up to $2,000—these direct payments will not reduce the amounts available to the claimants under the common fund. Id. ¶¶ 6–7. Orion Marine will pay the reasonable costs associated with administering the common fund. Id. ¶ 4. The class members

will each receive notice of their rights to the common fund and, in the event any amounts are rejected or undeliverable, those funds will be distributed to a § 501(c)(3) charity designated by this Court (Plaintiff suggests Bay Area Legal).

In addition to each class member automatically receiving a check for approximately $25.00, Defendant agreed to and has paid to fund a professional class administrator to send notice. The cost of administration will not impact the class members' recovery in any way. Finally, the results achieved by Plaintiff warrant the award of attorneys' fees and costs, as requested by Class Counsel in the fee petition (*see* Doc. 24), in the lodestar amount of $10,000. Defendant does not oppose the fees or costs sought by Plaintiff, nor does Defendant oppose the incentive award sought by Plaintiff. For these reasons, the Court should grant this Motion in its entirety.

**C. Preliminary Settlement Approval.**

On January 9, 2019, the Court preliminarily approved the Settlement and preliminarily certified the Settlement Class for settlement purposes. (Doc. 22). The class certified was as follows:

> Improper Disclosure Class: all applicants for employment with and employees of Orion Marine Construction, Inc., as to whom Orion Marine Construction, Inc., procured a background check, including a consumer report, from May 5, 2016 (two years before the filing of the original complaint), through October 5, 2018 (the date of the mediated settlement)

No Class Members objected to the settlement. Likewise, no class members opted-out.

**D. Class Notice.**

The Parties hired one of the country's most reputable class administrators, American Legal Claim Services, LLC ("ALCS"), to administer notice. On January 18, 2019, notices of the proposed Settlement were mailed by Defendant to the persons who constitute the Settlement Class. (*See* Exhibit B, Declaration of Class Administrator employee, Keith Salhab ("Salhab Decl."). The

notice mailed included all of the Court-approved information, including total settlement value, information on attorneys' fees and costs, how to opt-out and/or object, and the time/date of the final fairness hearing. It also included a line to a specially created website just for this settlement, along with a 1-800 number that class members could call and obtain information from.

The standalone website has a web address of www. www.kellyfcrasettlement.com.com. The website contained the full text of the Settlement Agreement, the long form Notice of Proposed Class Action Settlement and Hearing, the Preliminary Approval Order, Complaint, key dates, a listing of frequently asked questions and answers, the contact information for Class Counsel and the Settlement Administrator.

**E. Class Member Reactions.**

The notice period closed on March 25, 2019. As of the date of this filing, there have been **zero** opt-outs from Class Members and **zero** objections to the Settlement (Salhab Decl., ¶¶ 10-11). Therefore, the Class Members' reaction to the Settlement was unquestionably positive.

**F. Relief to Be Provided After the Settlement Becomes Effective.**

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all members of the Settlement Class in exchange for Defendant's agreement to pay the Settlement Class Members a total of $23,300 to be divided on a pro rata basis. With the Settlement Class comprised of 932 members, each Settlement Class member who does not opt-out of the settlement will receive a settlement payment almost $25.00. This a "claims paid" settlement. Class members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Class members who do not opt out will simply receive checks after final approval. The funds from checks that remain uncashed for 60 days after they are mailed will revert back to the Defendant.

The Named Plaintiff shall have, in addition to the claim provided her as a member of the Settlement Class, an additional claim in the sum of $2, 000 as an Incentive Payment for the services provided to the Settlement Class in connection with the prosecution of this action, including assistance in developing the facts necessary to file the Complaint and her participation in the mediation, discovery, and the facts provided for the two complaints.

**ARGUMENT**

Fed.R.Civ.P. 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." While Rule 23(e) does not provide any standards or guidelines for settlement approval, it is well-established in this Circuit that "in order to approve a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.' " *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). When examining the fairness, adequacy, and reasonableness of a settlement, the Eleventh Circuit requires a district court to examine a number of factors, including: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009) (*quoting Bennett*, 737 F.2d at 986), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd*., 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010). When evaluated under these factors, the Parties' settlement is fair, adequate, and reasonable.

**1) Success at Trial Is Uncertain.**

Significant obstacles and risk would face the members of the settlement class if this case were to proceed to trial. Further litigation would have been complicated, protracted, and expensive. Defendant asserted numerous defenses, which collectively increased the risk of the class being unable to establish liability and damages. The Settlement represents a recovery of almost $70 for each member of the Class. The monetary recovery for the Classes is substantial when compared to what the Classes would receive had the case been litigated to judgment. The FCRA provides for statutory damages of between $100 and $1000 for each willful violation. 15 U.S.C. §1681n(a)(1). This same range, $100-$1000, applies to all FCRA violations, including situations where a user obtains a credit report for no permissible reason, or where the consumer reporting agency willfully failed to ensure reasonable procedures were in place to ensure the accuracy of a report, or where the consumer reporting agency willfully reported information that it was statutorily forbidden to report. *See, e.g*. 15 U.S.C. §§ 1681e(b), 1681c(a), 1681b(a). Given the broad range of FCRA violations which can fall within the $100-$1,000 range and the fact that many of those violations are more egregious than those presented here, it is likely that, even at the end of successful litigation, each Class Member's recovery would be much closer to $100 than $1,000.

In sum, members of the Settlement Class face significant legal issues that make the likelihood of success at trial uncertain at best. The substantial risks inherent in this case strongly support settlement at this stage of litigation.

**2) The Settlement Falls within the Range of Recovery.**

The second and third factors for assessing a settlement, generally analyzed together, are the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable. *See Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla.

1988). The range of possible recovery "spans from a finding of non-liability through varying levels of injunctive relief." *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 468 (S.D. Fla. 2002). "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *LiPuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).

The monetary amount recovered by Class Counsel in this case is comparable and actually better than many FCRA class action settlements. For example, in *Simons v. Aegis*, inadequate disclosure claims were settled for a $33 gross payment for around 20,000 class members on a gross basis. *See Simons v. Aegis Comm. Grp*., No. 2:14-cv-04012, Mot. for Prelim Approval at 5, 11 (W.D. Mo. Aug 11, 2014) (Doc. 24) & Order Granting Final Approval (W.D. Mo. Jan. 15, 2015) (Doc. 32). Indeed, in the FCRA context the pro rata Settlement Class member recovery of is in line with -- and in many cases better -- than the per class member settlement amounts in similar cases under the FCRA. *Speer v. Whole Foods Mkt. Grp., Inc.*, 8:14-cv-03035, 2016 WL 7187183, at *2 (M.D. Fla. Jan. 15, 2016) (approving a similar settlement agreement under which the class members received an estimated $24 apiece as net payouts); *Simons v. Aegis Commcn's Grp., LLC*, No. 2:14-cv-04012 (W.D. Mo. Jan. 15, 2015), ECF No. 32 (granting final approval to a similar FCRA settlement under which the plaintiffs alleging nondisclosure received gross payouts of $35 apiece subject to reductions for attorney fees and administration costs).

The Settlement therefore is within the range of other FCRA class action cases. On one hand, there is a chance that Defendant (if found to be liable) could be assessed a judgment for between $100 - $1,000 to each member of the Settlement Class while; on the other hand, the Settlement Class, if unsuccessful, could receive nothing. Under the Parties' Settlement Agreement the Settlement Class members can quickly realize a portion of their possible FCRA claims from

the Settlement Fund, even if the amount is less than the minimum that could have been recovered through successful litigation. The Named Plaintiff supports the Settlement. And not a single class member objected to it or asked to be excluded. Thus, these factors weigh in favor of approval of the Settlement.

**3) The Litigation Has Been Complex, Costly, and Substantive.**

To initiate the action, Named Plaintiff filed his Complaint and then immediately engaged in class wide discovery. During the pendency of the FCRA Litigation, the Parties exchanged preliminary documents and information, including headcount data on the putative class members in the proposed Settlement Class (932 people), information on Defendant's operation, and the FCRA disclosure and authorization/consent forms received by the Named Plaintiff. Plaintiff propounded class-wide discovery, along with a 30(b)(6) deposition topic notice (and request for a corporate representative deposition). Prior to the Parties getting too deep into the discovery process, counsel for both sides agreed that an early mediation might be fruitful. So, everything was stayed pending mediation.

In sum, this class action was resolved only after detailed research and analysis of the claims at issue and comprehensive information exchanges by the Parties. Further litigation and motion practice would increase the expense of this litigation, but would likely not reduce the risks of litigation for the settlement class. This factor, too, cuts in favor of approval.

**4) There Has Been No Opposition to The Settlement.**

None of the class members objected to the proposed settlement. Lack of objections is a significant factor in determining whether the proposed class settlement is reasonable to the class as a whole. *Allapattah Servs. v. Exxon Corp.*, 2006 U.S. Dist. Lexis 88829 (S.D. Fla. 2006); *see also, Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that "[i]f

only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Camp v. City of Pelham*, 2014 U.S. Dist. Lexis 60496, at *11 (N.D. Ala. May 1, 2014) (fact that no objections were received, "points to the reasonableness of [the] proposed settlement and supports its approval" (citations omitted)); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (stressing that "[i]t has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of objections.'"). Here, there were no objections to the settlement submitted. Further, the participation rate among the class — **100%** — indicates acceptance of the settlement terms among the entire settlement class. Therefore, this critical factor weighs heavily in favor of final Court approval of the settlement.

**5) Settlement Was Achieved Following Substantive Litigation.**

As set forth above, the Parties have engaged in litigation, participated in preliminary discovery on class size, and conducted arm's length settlement negotiations. This was not an example of a case in which the Parties agreed to settle promptly after the complaint was filed. Counsel for both parties are experienced litigations. The Parties have extensively analyzed the strengths and weaknesses of their respective claims and defenses, as well as the advantages and disadvantages of settlement. The Parties reached settlement after months of active litigation. Class counsel thus believes that the settlement is in the best interest of the settlement class. In short, all of the factors enumerated in this Circuit for determining whether a proposed settlement is fair, adequate, and reasonable support final approval in of the proposed Settlement.

**6) The Settlement is Not the Product of Collusion.**

There is no evidence of collusion in this proposed settlement, and "[t]here is a presumption of good faith in the negotiation process. Where the parties have negotiated at arm's length, the

Court should find that the settlement is not the product of collusion." *Saccoccio*, 297 F.R.D. at 692; *see also*, *Canupp v. Sheldon*, 2009 U.S. Dist. Lexis 113488, at *26-27 (M.D. Fla. Nov. 23, 2009) (upon showing of arm's length negotiation and lack of collusion, threshold for collusion standard satisfied); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (a court "can rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel'") (*citing Cotton*, 559 F.2d at 1330)).

Here, all of the evidence reflects that the settlement was the product of arm's length negotiations. As noted above, the Parties reached a settlement after Plaintiff sought class information and propounded class-wide discovery, exchange preliminary information on the class size, and participated in extensive settlement discussions before highly respected mediator, Mark Hanley. As such, the Court should find that the settlement is not the product of collusion. *See Bennett*, 737 F.2d at 987 ("In sum, the court has determined that the settlement has been achieved in good faith through arms length negotiations and is not the product of collusion between the parties and/or their attorneys. There is no evidence of unethical behavior, want of skill or lack of zeal on the part of class counsel."); *accord Behrens*, 118 F.R.D. at 539; *Canupp*, 2009 U.S. Dist. Lexis 113488, at *27.

**MOTION FOR FINAL CERTIFICATION OF THE SETTLEMENT CLASS**

In their Joint Motion for Preliminary Approval, the Parties presented detailed justification for certification of the settlement classes under Rule 23(a) and 23(b)(3). The Court's Preliminary Approval Order found that, for settlement purposes, the settlement class was proper under Rule 23(a) and 23(b)(3). Since the Court's Preliminary Approval Order, no objections addressing certification issues have been received. As recognized in the Agreement and the Court's

Preliminary Approval Order, the settlement class is appropriate for the reasons summarized in the Parties' Joint Motion for Preliminary Approval, and as set further set forth below.

**A. <u>The Settlement Class Satisfies All Rule 23(a) Requirements</u>.**

**1. The Settlement Class Meets the Numerosity Threshold.**

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. The settlement class certified by the Court has over 900 members, thus exceeding the numerosity threshold at which joinder is impracticable. "While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that having more than 40 class plaintiffs is generally enough to satisfy the rule." *Klewinowski v. MFP, Inc*., 2013 U.S. Dist. Lexis 130591, at *4 (M.D. Fla. Sept. 12, 2013) (*citing Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986)).

**2. The Class Members Share Common Questions of Law and Fact.**

As more fully detailed in the Parties' Joint Motion for Preliminary Certification, the settlement class shares common questions of law and fact and alleges a similar harm. The claims of the Settlement Class members are based on the same set, or a similar set, of operative facts, including: (1) whether Defendant's notice and authorization form satisfies the notice and authorization requirements under 15 U.S.C. § 1681b(b)(2)(A); (2) whether Defendant's "release" contained in the background check authorization violates the FCRA; and, (3) whether Defendant acted willfully in its failure to satisfy the requirements under the FCRA, which is relevant to damages.

As a result of the similar nature of these facts and legal issues the class claims readily satisfy the commonality requirement of Rule 23(a)(2). *See e.g. Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 396 (N.D. Ill. 2006) (finding commonality and certifying FCRA class when all class

members received the same mailer); *Murray v. New Cingular Wireless Servs., Inc*., 232 F.R.D.295 (N.D. Ill. 2005) (same); *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502 (S.D. Ind. 2007) (same); *Serrano v. Sterling Testing Systems, Inc*., 711 F. Supp. 2d 402, 411 (E.D. Pa. 2010) (finding commonality where class members sought statutory damages under the FCRA and the case turned on whether the defendants' alleged conduct was willful).

**3. Claims Have Arisen from Similar Legal and Remedial Theories.**

This Court properly found in its Preliminary Approval Order that Rule 23(a)(3)'s demand for typicality has been satisfied by the Parties' showing that the class representatives' and class members' claims have arisen from similar legal or remedial theories. *See Klewinowski*, 2013 U.S. Dist. Lexis 130591, at *6 ("The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary," *citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) and *Rosario-Guerrro v. Orange Blossom Harvesting, Inc.*, 265 F.R.D. 619, 627 (M.D. Fla. 2010), *adopted by Rosario-Guerrro v. Orange Blossom Harvesting, Inc.*, 2010 U.S. Dist. Lexis 15739 (M.D. Fla. 2010)) (*internal quotations and citations omitted*). No change to the claims has arisen since the Court entered its Preliminary Approval Order, and for these reasons the typicality requirement is satisfied.

**4. The Dual Requirements of Adequacy Are Satisfied.**

The adequacy requirement of Rule 23(a)(4) "'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. Lexis 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing*

*Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008)). No objection or information contrary to the Court's Preliminary Approval Order has been raised contesting the ability of the class representative, Jordan Kelly, and of Class Counsel to fairly and adequately protect the interests of the class. Further, no evidence has arisen of an improper conflict of interest between the class representative and her counsel and any members of the settlement class. Class counsel is qualified to guide the class and there is no reason to doubt their ability to adequately prosecute the action.

**B. The Settlement Class Satisfies the Requirements of Rule 23(b)(3).**

As more fully detailed in the Parties' Joint Motion for Preliminary Approval, the settlement class meets the requirements of Rule 23(b)(3) in that common questions of law affecting proposed class members predominate over questions affecting individual members and that class action is the best available method for adjudicating this controversy.

**1. Predominance.**

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (internal citations omitted). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

As set out in the Parties' Joint Motion for Preliminary Approval, here common questions of law and fact predominate. The central common issues in this case are whether Defendant's

FCRA forms satisfy the notice and authorization requirements under the FCRA and, if not, whether Defendant's failure to comply with the FCRA was willful. These common issues are the most important issues in the case, and can be decided uniformly for all Settlement Class members in broad strokes. Thus, class certification is appropriate. *See Reardon v. Closetmaid Corp*., 2013 WL 6231606, at *18 (stating "[t]he fact that [defendant] may raise distinct factual defenses as to some members of [the class] based on the different reasons for which [defendant] allegedly declined to hire different [class] members is not fatal to the predominance requirement's fulfillment.").

**2. Superiority.**

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3).

Of the 900+ class members none asked to be excluded from the Settlement and none objected to the Settlement. The 100% positive response rate and lack of objections demonstrates that there is significant interest in the collective resolution of these claims. Superiority is met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for members of the Settlement Class in this case and the fact that there are common issues shared by the Settlement Class members, the individual interest in controlling the case through separate actions is relatively low. *See Kizer*, 2012 U.S. Dist. LEXIS 63795, at *20 ("Given the small amount of damages for most class members in this case and the fact that

there are common issues shared by the class members, the individual interest in controlling the case through separate actions is relatively low.”).

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. “Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts.” *In re Checking Account Overdraft Litig*., 275 F.R.D. 666, 679 (S.D. Fla. 2011). Defendant’s hires at issue in this Settlement Class come from throughout Florida. So, rather than having separate lawsuits filed in different parts of the state in different courts by different putative class members, the Settlement -- if granted final approval -- will instead allow all claims by the Settlement Class to be resolved in one case. Finally, under the Federal Rule of Civil Procedure 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the Settlement Class it would not need to determine whether the class would be manageable for litigation purposes. *Kizer v. Summit Partners, L.P*., 2012 U.S. Dist. LEXIS 63795, at *21 (E.D. Tenn. May 7, 2012) (approving class settlement under superiority analysis where “given that this matter did not go to trial, concerns regarding management of the class action are minor”).

Hence, the superiority analysis under Federal Rule of Civil Procedure 23(b)(3) is met. *Jankowski v. Castaldi*, No. 01 Civ. 164 (SJF)(KAM), 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (finding superiority where “the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue). Concentrating all the potential litigation concerning the FCRA rights of Named Plaintiff and the Settlement Class in this Court will avoid a multiplicity of suits while also conserving judicial resources and the resources of the Parties. Thus, this proposed settlement is the most efficient means of resolving the FCRA claims of the Named Plaintiff and Settlement Class members.

For these reasons, Plaintiff respectfully submits to the Court that the prerequisites for certification have been met. Plaintiff further requests that the Court issue a final order certifying for settlement purposes the Class identified in the Parties' Joint Motion for Preliminary Approval and enter the attached proposed Final Order.

**C. The Court Should Grant Plaintiff's Fee Petition and Award an Incentive Payment to the Class Representative, Stephanie Smith.**

The Court should also grant Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs for the reasons set out in Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs. Indeed, since the filing of Plaintiffs' fee petition, Class Counsel has expended significant time drafting and finalizing this Motion, and its exhibits, for which they seek no additional compensation. Fees were capped, and, thus, Plaintiff's counsel seeks no more compensation other than the amount agreed to in the settlement agreement.

The Named Plaintiff Incentive Award of $2,000 for Named Plaintiff should be also awarded. "At the conclusion of a successful class action case, it is common for courts, exercising their discretion, to award special compensation to the class representatives in recognition of the time and effort they have invested for the benefit of the class." *Helmick v. Columbia Gas Transmission*, 2010 U.S. Dist. LEXIS 65808, at *3 (S.D. W. Va. July 1, 2010), (granting $50,000 personal service award out of $450,000 settlement); *Kay Co. v. Equitable Production Co.*, 749 F. Supp. 2d 455, 468 (S.D. W. Va. 2010) (granting $15,000 personal service award for initiating suit and providing and analyzing records during discovery); *Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (approving $12,500 incentive payment). Class Representative Jordan Kelly has provided a great deal of value to the Class, and the requested award of $2,000 should be awarded. He missed work to personally attend both mediation, despite the financial burden missing work created. He also analyzed and assisted with amending the Complaint, and reviewing the documents at issues, including

in the settlement agreement. In short, without Named Plaintiff it is unlikely the class here would have recovered anything, much less nearly $25.00 per class member.

## CONCLUSION

For the reasons set forth above, the Parties respectfully requests that the Court: (1) order final approval of the parties' Settlement; (2) dismiss Plaintiff's and the Settlement Classes' claims against Defendants with prejudice; and (3) grant Plaintiff's Unopposed Motion for Attorneys' Fees and Costs. A proposed final Order is attached hereto as Exhibit A.

DATED this 12th day of April, 2019.

Respectfully Submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
**Wenzel Fenton Cabassa, P.A.**
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
Main No.: 813- 224-0431
Direct No.: 813-379-2565
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: jcornell@wfclaw.com
*Attorneys for Plaintiff*

/s/ Phillip J. Harris
**Phillip J. Harris, Esq**.
FBN 118801
pharris@constangy.com
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
100 N. Tampa St., Suite 3350
P.O. Box 1840
Tampa, FL 33601-1840
(813) 223-7166 / Fax: (813) 223-2515
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 12th day of April, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to:

Phillip J. Harris
Constangy, Brooks, Smith & Prophete, LLP
100 North Tampa Street
Suite 3350
Tampa, FL 33601

*/s/Brandon J. Hill*
**BRANDON J. HILL**